IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


DANNY L. FARLER,

                              Plaintiff,              Case No. 3:10 CV 1274

              -vs-
                                                      MEMORANDUM   OPINION
INDUSTRIAL POWER SYSTEMS, et al.,

                              Defendant.

KATZ, J.

        Defendant Industrial Power Systems employed plaintiff Danny L. Farler until December

17, 2008, when Industrial's owner and CEO, defendant Kevin Gray, terminated Mr. Farler's

employment. Mr. Farler claims that while he was an employee at Industrial, coworker Elizabeth

White subjected him to a hostile work environment primarily by her use of vulgar and profane

language.[1] He further claims that Industrial terminated him because of his complaints about the

discriminatory treatment. Mr. Farler brought this action alleging that the defendants subjected him

to racial and sexual discrimination, that they subjected him to a hostile work environment, that

they retaliated against him after he engaged in a protected activity, that they conspired to commit

these acts, and that the defendants interfered with a business relationship.

        Before the court now is Industrial's and Mr. Gray's joint motion for summary judgment

(Doc. 55), which Mr. Farler opposes.

I. JURISDICTION

        Title 28, Section 1331 provides the Court's jurisdiction since Mr. Farler's complaints arise

from alleged violations of Title VII. 42 U.S.C. § 2000e, *et seq.* The Court has supplemental

---

[1]

Ms. White was previously a defendant but Mr. Farler dismissed all claims against her with
prejudice. (Doc. 50.)

jurisdiction over Mr. Farler's related claims arising under state law because, as alleged, they form part of the same case and controversy. 28 U.S.C. § 1367.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of, "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party can avoid judgment only by setting forth facts that show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(a) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The Court must enter summary judgment, "against a party who fails to make a

2

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. ANALYSIS

Mr. Farler alleges that the defendants violated Title VII by: discriminating against him in demoting and terminating him, discriminating against him by subjecting him to a hostile work environment, and retaliating against him by terminating his employment after he complained about the hostile work environment. (Compl., Doc. 1.) Mr. Farler's other state law claims are derivative of – and dependent on – his two claims of discrimination and his claim of retaliation.

### A. DISCRIMINATION

3

Mr. Farler claims that the defendants subjected him to racial and sexual discrimination when they demoted and terminated him. The defendants claim that Mr. Farler cannot point to evidence in the record supporting his claim that his demotion or termination was a result of racial or sexual discrimination. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) ("To make out a prima facie case for gender discrimination, a plaintiff must show that [he] was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct."). Mr. Farler's response does not address these elements and refocuses his claim on the hostile work environment. Where he has not pointed to some evidence supporting a claim, the Court must grant summary judgment. *Anderson*, 477 U.S. at 250. This eliminates Mr. Farler's first claim (discrimination arising under Title VII) and a portion of his fourth claim (discrimination arising under Ohio law).

## B. HOSTILE WORK ENVIRONMENT

The second of Mr. Farler's Title VII claims, that for a hostile working environment, merits more analysis. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *accord Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009). To establish his prima facie hostile work environment claim, Mr. Farler must be able to show that: (1) he was a member of a protected class, (2) he was subjected to unwanted racial or sexual harassment, (3) the harassment was based on his sex or race, (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work

4

environment, and (5) that Industrial and Mr. Gray can be held liable because they knew or should have known about the harassment and failed to act. *Barrett*, 556 F.3d at 515; *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

1. BASED ON RACE

Mr. Farler can show evidence that his former coworker, Elizabeth White, made racially derogatory comments about President Barak Obama and a customer's employee who was of Asian descent. (Farler Dep., Doc. 51-1 at 15-16.) However, even assuming the comments would otherwise amount to racial harassment, Mr. Farler has not pointed to evidence that would suggest Ms. White made the comments based on Mr. Farler's race. To violate Title VII, harassment must be based on the employee's race. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). "Harassment is based on race when it would not have occurred but for the plaintiff's race." *Id.*; *see also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (same); *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002) *abrogated on other grounds by White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232 (6th Cir. 2005) ("[A] racial or sexual hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender."). Both Mr. Farler and Ms. White are white and Mr. Farler points to no evidence indicating that Ms. White made the racially derogatory comments made about the President or the customer's employee because of Mr. Farler's race.

2. BASED ON SEX

Mr. Farler also says that Ms. White created a hostile work environment through sexual harassment. He points to five pieces of evidence supporting this. First, when Mr. Farler asked Ms.

5

White, "What's up?", she responded, "Hard cocks and helicopters." (Farler Dep., Doc. 51-1 at 15.) Second, Ms. White railed against President Barak Obama's election using racial epithets and said that someone ought to shoot him. (*Id.*) Third, Ms. White told a story at work about a time in her personal life where, in the interest of seeking revenge, Ms. White sat on a man's lap and, as that man's wife walked in, kissed him and asked him, "Didn't you tell your wife that you and I have been fucking?" (*Id.* at 16.) Fourth, Ms. White told Mr. Farler that if another coworker did not comply with Mr. Farler's request to send a company vehicle for his use, she would call that coworker and, she said while grabbing her own crotch, "tell him to suck my dick." (*Id.* at 17.) And, fifth, Ms. White called Mr. Farler something to the effect of a masturbator. (*Id.* at 91. ("It was something to the effect, Are you the master, your own master, or are you a masturbator, to that effect.").)

To find that harassment based on sex created a hostile work environment, Mr. Farler could show either that the harassment was general in nature but directed towards him because of his sex, *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir.1999), or that the harassment was "explicitly sexual and patently degrading of [one sex]," even if it was not directed towards him because of his sex, *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir. 2009). Mr. Farler conflates these standards, but the Court will address them separately.

All five of Mr. Farler's allegations of harassment could apply to analyze the *Williams v. General Motors* standard because that standard examines whether harassing behavior of any sort was directed at the plaintiff because of his sex. 187 F.3d at 565. Yet, even if the Court accepted each instance as harassment, Mr. Farler has not pointed to evidence indicating that Ms. White subjected him to the harassment because he is male. In fact, the record indicates that Ms. White's

6

conduct was indiscriminate in that it was often directionless or directed at a variety of people. (*See, e.g.,* Knisely Aff., Doc. 56-1 at ¶ 8; Farler Dep., Doc. 51-1 at 17 (detailing Ms. White's abusive language towards vendors).) Further, Mr. Farler acknowledges that Ms. White was not directing her harassment at male employees or at him because he was male, but at him because she did not like him. (*Id.* at 32-35.) Therefore, Mr. Farler has not shown evidence indicating that Ms. White used harassment in general to create a hostile work environment based on his sex.

Mr. Farler relies more on the *Gallagher* standard, where harassment need not be directed at the plaintiff if it is "explicitly sexual and patently degrading of" the plaintiff's sex. 567 F.3d at 271. In this analysis, the second and third of Mr. Farler's examples are, on their face, not sexual harassment. The second example – that is, the racial comments discussed previously – are not harassment degrading to people of Mr. Farler's sex. *See Farmer*, 295 F.3d at 605. Mr. Farler does not expound on how the third instance – that is, Ms. White's story of seeking revenge against her ex-husband's friend by acting as if she was having an affair with him in front of the friend's wife – amounts to sexual harassment of Mr. Farler. Ms. White did claim she kissed the man, but the story is one of revenge, not a sexual exploit. Furthermore, Mr. Farler acknowledges that he took the story as an indication of how she might seek revenge, (Farler Dep., Doc. 51-1 at 103) and this leaves the Court without an indication that this is sexual harassment.

On the other hand, Mr. Farler's first, fourth, and fifth allegations – that Ms. White created a hostile work environment with her "hard cocks and helicopters" comment, her "suck my dick" comment and gesture, and her accusation that Mr. Farler was a masturbator (Doc. 56 at 4, 10) – merit consideration under the *Gallagher* standard. 567 F.3d at 271. To move forward, Mr. Farler would need to demonstrate some evidence that the harassment was so severe or pervasive as to

interfere with his job performance. *Gallagher*, 567 F.3d at 273 (quoting *Williams v. General Motors*, 187 F.3d at 566) (noting that conduct that is not severe or pervasive is outside Title VII's purview). To show that the harassment was severe or pervasive in the workplace, Mr. Farler would need to introduce some evidence on both the subjective test (that is, that he "subjectively found the conduct severe or pervasive") and the objective test (that is, "whether a reasonable person would find the environment objectively hostile"). *Williams v. General Motors*, 187 F.3d at 568. Mr. Farler testified that the harassment was affecting his focus and he walked away to collect himself after hearing each one. (Doc. 51-1 at 99.) Even if an employee can perform his job duties, if he can show that the harassment made his job more difficult, he can survive summary judgment on the subjective test. *Gallagher*, 567 F.3d at 274. Mr. Farler's deposition testimony is sufficient to meet the subjective test burden.

To answer the objective test and determine whether a reasonable person would find the environment hostile, the Court must look at the totality of the circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Harris v. Forklift Syss.*, 510 U.S. at 23). Turning to the frequency of the conduct, Mr. Farler said he heard the hard cocks and helicopters line, "[a] couple times, several." (Farler Dep., Doc. 51-1 at 98.) Mr. Farler said he heard the "suck my dick" statement twice. (*Id.* at 83.) Mr. Farler says that Ms. White called him a masturbator once. (*Id.* at 91.)[2] Since the Court can only

_____

[2]

Mr. Farler also points to the affidavit of union representative Mike Knisley, who did not work directly with Mr. Farler or Ms. White. Mr. Knisley met with Ms. White once in 2008 and he avers

(continued...)

8

find six instances that could be deemed sexual harassment (as opposed to those instances where Mr. Farler felt Ms. White was being abusive or harassing but in a manner other than sexual) and since the six occurred in the eleven weeks between Ms. White's hiring on September 29, 2008 and Mr. Farler's termination on December 17, 2008, they do not appear frequent.

The severity element also does not favor Mr. Farler. Vulgar language or words that have "sexual content or connotations" are not necessarily harassment. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). To be objectively severe, the conduct must rise above "sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale* 523 U.S. at 80). "Sporadic use of abusive language" perfectly describes the first five instances (three "hard cocks and helicopters" and two "suck my dick" comments). Mr. Farler does not claim that Ms. White directed any of these at him (that is, that the former comment was about his anatomy or the latter was an instruction for him). Of course, comments can create a hostile work environment without being directed at the victim, *Gallagher*, 567 F.3d at 272, but this does not prevent the Court from including the comments' direction as

---

[2](...continued)

that during that meeting, Ms. White "constantly used swear words related to sexual functions, made sexual references, and even grabbed herself in the crotch." (Knisley Aff., Doc. 56-1 at 2-3.) Mr. Knisley's contention is an account of a third party's interaction with Ms. White and does not claim that Ms. White subjected Mr. Farler or any other IPS employee to the harassment. While this statement might bolster Mr. Farler's credibility were that in question here, it is not evidence of instances of sexual harassment directed against Mr. Farler or evidence that Mr. Knisely witnessed sexual harassment permeating the workplace. Furthermore, Mr. Farler has not shown how he was affected by the way Ms. White treated Mr. Knisely. See *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 718-19 (6th Cir. 2012) (finding that harassment against others can only be aggregated when the plaintiff explicitly says he knew of the other harassment and the harassment affected him).

part of the severity consideration. *See, e.g.*, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464-65 (6th Cir. 2000) (citing cases where courts found a mix of serious behaviors, some directed at the plaintiff and some not, to be less than "severe"). Ms. White directed her sixth comment, that is, when she asked Mr. Farler if he was master of his domain or a masturbator, at Mr. Farler. Notwithstanding its vulgarity or lack of taste, the context of Ms. White's question puts it far from the troubling realm of asking about a co-workers' sexual habits and squarely in the realm of "occasional teasing." *Faragher*, 524 U.S. at 788. Thus, notwithstanding the poor taste and unpleasantness employed by Ms. White, Mr. Farler has not shown the conduct is other than five instances of abusive language and one instance of occasional teasing. This does not meet the severity test.

Mr. Farler has not pointed to evidence that a reasonable person would find these six comments physically threatening or humiliating or that they would interfere with a reasonable person's work performance. *See Harris*, 510 U.S. at 23. Mr. Farler has not met the burden, therefore, of showing that these comments were objectively severe and pervasive. Without presenting evidence of a hostile work environment, Mr. Farler's claim does not survive summary judgment. This eliminates Mr. Farler's second claim for relief (the Title VII claim for a hostile work environment) and the remaining hostile work environment portion of his fourth claim (the Ohio law claim). *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St. 3d 607, 610, (Ohio 1991) (allowing the use of Title VII law to decide claims arising under Ohio Revised Code § 4112); *accord Chandler v. Dunn Hardware, Inc.*, 860 N.E.2d 1042, 1044 (Ohio Ct. App. 2006).

C. RETALIATION

Mr. Farler says that Industrial demoted and then terminated him in retaliation for his complaining about Ms. White's harassment. Title VII explicitly bars retaliation for opposing an employer's conduct that otherwise violates Title VII: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Mr. Farler has alleged only circumstantial, not direct, evidence of retaliation, so the Court applies the *McDonnell Douglas/Burdine* framework and first looks to whether Mr. Farler can establish a *prima facie* case of retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). "In order to establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Industrial asserts that Mr. Farler cannot point to any evidence on the first and fourth elements.

Complaining about allegedly unlawful practices is a protected activity for Title VII purposes. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008). Even though the Court found, *supra*, that Mr. Farler cannot demonstrate a claim for actual sexual harassment, "a retaliation claim may succeed where no sex discrimination ever took place." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 188, (2005). To be a protected activity, however, the plaintiff needs to have a good faith belief that he is complaining about conduct that Title VII makes illegal. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000).

11

Mr. Farler complained to his immediate supervisor, Gene Smedlund about several things on several occasions: a disagreement Mr. Farler had with Ms. White's boyfriend, Tim Logan, about whether Mr. Farler was obligated to give Mr. Logan another person's cell phone number, (Farler Dep., Doc. 51-1 at 30-31); Ms. White's unprofessional language in the office, (*id.* at 37); Ms. White's hostility towards vendors, (*id.* at 38); Ms. White's insistence on meddling in field operations, (*id.* at 38-39); and the fact that Ms. White called herself a "trailer bitch," (*id.* at 77-78). Mr. Farler also complained one time to Industrial's owner, Mr. Gray, about several things: Ms. White's moodiness; her recounting seeking revenge against her ex-husband's friend; her "hard cocks and helicopters" comment; and her racially derogatory comments about the President and a customer's employee. (*Id.* at 40.)

Mr. Farler considered Ms. White's conduct to be harassing (*id.* at 23), but much of it is not precluded by Title VII because it neither was based on his sex (*Williams v. General Motors*, 187 F.3d at 565) nor created a hostile work environment to people of his sex (*Gallagher*, 567 F.3d 272). Complaining about mistreatment at work that is not sexual harassment is not protected by Title VII. *Gomes v. Prime Design, Inc.*, 85 F. App'x 421, 423 (6th Cir. 2003) (upholding judgment against a plaintiff who complained about hostility and vulgarity, but made "[n]o direct reference . . . to sexual harassment or gender based conduct in her letter," even though she was dismissed because of her complaint letter). Complaints about Ms. White's lack of professionalism, her moodiness, her hostility, and her rudeness to vendors are far enough outside Title VII's protection that Mr. Farler could not have had a good faith belief that he was complaining about illegal conduct. *See Johnson*, 215 F.3d at 580. Nevertheless, Mr. Farler may be able to show that two of his complaints – the one to Mr. Smedlund about Ms. White's unprofessional language (because it

12

may be a reference to one or more of the instances that the Court recognized, *supra*, as potential sexual harassment) and the complaint to Mr. Gray about the "hard cocks and helicopters" statement – were protected activities because he may be able to demonstrate that he thought he had a good faith belief that he was complaining about conduct made illegal by Title VII.

The second and third elements of a *prima facie* case are not at issue here, but Industrial says that Mr. Farler cannot show evidence supporting the fourth element: that his exercise of the protected right was the cause of his termination. *Nguyen*, 229 F.3d at 563. Mr. Farler can show that the day after he and Mr. Gray talked about how Mr. Farler was unhappy with several things, including Ms. White's conduct, Mr. Gray contacted Mr. Smedlund and told him to terminate Mr. Farler's employment. (Smedlund Dep., Doc. 53-1 at 55-56.) Since one of Mr. Gray's stated reasons for the termination was that he was hard to manage, (Doc. 58 at 11), Mr. Farler may be able to show his complaining in general (both about Ms. White's conduct and about many other things) was a reason for termination. The close temporal relationship between the complaint and the termination decision combined with the fact that Mr. Farler may be able to show that his complaining was a reason for termination meets the *prima facie* threshold. *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection.").

This shifts the burden to Industrial to demonstrate a non-discriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Industrial proffers – and points to some evidence in the record – that it terminated Mr. Farler because (1) his efforts led to poor financial performance and Mr. Gray thought Ms. White and Mr. Logan would run the

13

Lima operation better (Doc. 55 at 18), (2) he was belligerent and threatening to Mr. Gray, (3) he was hard to manage and constantly threatening to quit, (4) he spent too much time in the office and too little time in the field. (Doc. 58 at 11.) This returns the inquiry to whether Mr. Farler can show Industrial terminated him in retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quotation omitted). The record shows Industrial's reasons have some bases in fact. During Mr. Farler's tenure, the Lima operation lost over $200,000 and during the period following his termination, the operation made around the same amount. (Guy Dep., Doc. 54-1 at 113-15 (Industrial's chief financial officer); Farler Dep., Doc. 51-1 at 130-132 (acknowledging that if the numbers on the income sheet were accurate, they would represent such a loss and gain).) Of Mr. Gray's three additional reasons for terminating Mr. Farler, one does not find such clear support: Mr. Gray says he terminated Mr. Farler because he was belligerent and threatening on the phone, but that happened immediately *after* Mr. Smedlund terminated Mr. Farler and, thus, could not have been a reason for the termination. (Gray Dep., Doc. 52-1 at 173.) Mr. Gray's other two reasons (that Mr. Farler was hard to manage and that he spent too much time in the office), however, are plausibly supported by the record. (*Id.*)

Mr. Farler points to inconsistencies in Industrial's reason for his termination as support that the reasons were a pretext. "An employer's changing rationale for making an adverse

14

employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996), *amended on other grounds*, 97 F.3d 833 (6th Cir.1996). Shortly after his supervisor, Mr. Smedlund, terminated his employment, Mr. Farler spoke with Mr. Gray on the phone and Mr. Gray told him that his services were no longer needed and Industrial was going to be moving in a different direction. (Answer, Doc. 5 at ¶ 30.) Also, five days prior to the termination, Mr. Gray sent an email to Ms. White in which he said, "get Dan [Farler] the fuck out of there. He's not going to change . . . in your own way, get with Tim and communicate this to Gene. He is cancer, surgically needs to be removed." (Gray Dep., Doc. 52-1 at 245.) These do not, however, amount to inconsistencies. Mr. Gray's "Going in a different direction" answer does not express the actual reason for the termination and simply says, without delving into any reason, that he was terminating Mr. Farler. Thus, it does not conflict with Industrial's express reasons. *See, e.g.*, *Trapp v. TSS Technologies, Inc.*, 485 F. App'x 757, 760 (6th Cir. 2012) (declining to consider minor inconsistencies as evidence of a shifting rationale and pretext and instead looking context of each communication). Furthermore, Mr. Gray's email to Ms. White is consistent with the proffered reason that Mr. Farler was difficult to manage. Finally, the record does not support Mr. Farler's claim of inconsistency in whether the Lima branch was profitable. (Peters Decl., Doc. 58-1 (email exchange indicating Mr. Farler's counsel acknowledged misunderstanding the CFO's deposition testimony).)

Other than citing the close temporal relationship between when Mr. Farler complained about, among other things, Ms. White's conduct (both that which could be a Title VII violation and that which could not) and Mr. Gray's decision to terminate him, Mr. Farler has not pointed to evidence suggesting that his termination was retaliatory. "[T]he ultimate question at summary

15

judgment on a mixed-motive case is whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was a motivating factor in the defendant's adverse employment action against the plaintiff." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006) (quotations omitted). Mr. Farler has pointed to no evidence that his complaints about Ms. White's conduct were a "but-for" cause of his employment termination and he cannot maintain a claim for retaliation. This same analysis also compels the dismissal of Mr. Farler's Ohio law retaliation claim. *Little Forest Med. Ctr.* 61 Ohio St. 3d at 610.

### D. CIVIL CONSPIRACY AND TORTIOUS INTERFERENCE

Without a cognizable Title VII claim (or state law claim), Mr. Farler acknowledges he cannot maintain his claims for civil conspiracy and tortious interference. (Doc. 56 at 18.)

### IV. CONCLUSION

For the reasons stated herein, defendants Industrial Power Systems' and Kevin Gray's joint motion for summary judgment is granted in full. (Doc. 55.) Case closed.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

16